IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 17-cv-00655-PAB

Q. ILI-YAAS H. FARRAKHAN-MUHAMMAD,[1]

    Applicant,

v.

JACK FOX, Complex Warden,

    Respondent.

**ORDER ON APPLICATION FOR
WRIT OF HABEAS CORPUS**

**I. BACKGROUND**

This matter comes before the Court on the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241, Docket No. 1, filed *pro se* by Applicant, Q. Ili-Yaas H. Farrakhan-Muhammad. On April 27, 2017, the Court issued an order, Docket No. 11, directing Respondent to show cause why the Application should not be granted. Respondent filed a Response to Order to Show Cause, Docket No. 13, on May 17, 2017. On May 31, 2017, Applicant filed a Traverse/Reply, Docket No. 14.

Applicant, a federal prisoner in the custody of the Federal Bureau of Prisons ("BOP"), currently is incarcerated at the United States Penitentiary, Administrative Maximum, in Florence, Colorado. On February 20, 2015, Applicant received Incident

---

[1] The Court notes that Mr. Q. Ili-Yaas H. Farrakhan-Muhammad, Inmate Register #02791-088 is the same person as Christopher Mitchell, Q Ili-Yaas Haakeem Farrakhan-Muhammad, C. Eli-Jah Hakeem Muhammad, Elijah Hakeem Muhammad, and Caliph Ili-Yas Az-Hakeem Muhammad. The Court further notes that Applicant is identified by the Federal Bureau of Prisons as Q Ili-Yaas Haakeem Farrakhan-Muhammad.

Report ("IR") No. 2674280, which charged him with assault without serious injury in violation of Code 224. Docket No. 13-4 at 2 (Disciplinary Hearing Officer Report). The reporting officer described the incident as follows:

> On January 22, 2015 at 7:10 AM I was attempting to feed inmate Farrakhan-Muhammad, Q Ili Yaas Reg. No. 02791-088 while he was in the medical observation cell. After calling several times for inmate Farrakhan to step to the door to get his trays and no response, I proceeded to place the trays through the slot and on the floor when inmate Farrakhan stated, "stop fucking with me." Inmate Farrakhan then got up, grabbed the trays, and threw them back out the trays slot. The trays struck my right hand. I secured the tray slot without further incident.

*Id.* at 6 (Incident Report).

The incident report was referred to the FBI for further investigation. Docket No. 13-4 at 7-8. The FBI declined criminal prosecution and returned the incident to the BOP for institutional processing on February 20, 2015. *Id.* Applicant was advised of his rights on February 20 and given the opportunity to make a statement. *Id.* at 7. Applicant declined to make a statement. *Id.* Applicant received a copy of the incident report the same day. *Id.* at 6.

On February 23, 2015, the Unit Disciplinary Committee ("UDC") conducted a hearing and, as a result of the hearing, referred the charge against Applicant to a Discipline Hearing Officer ("DHO") for final disposition. Docket No 13-4 at 8. The DHO, however, returned the report to the UDC because the requested staff representatives were unavailable and errors were found on the submitted documents. *Id.* The warden found that there was good reason for the delay in processing the incident report and the delay did not hinder Applicant's ability to marshal a defense. *Id.*

2

On March 18, 2015, a second UDC hearing was held, at which time Applicant received a Notice of Discipline Hearing and the Inmate Rights at Discipline Hearing form. Docket No. 13-4 at 26-27. Applicant requested either Lieutenant Thomas or Lieutenant Martin as his staff representative. *Id.* at 26. Applicant also asked to call Lieutenant Conley as a witness because he had taken photos of the food trays at the time of incident. *Id.*

On April 27, 2015, a DHO conducted Applicant's hearing on IR No. 2674280. Docket No. 13-4 at 2. At the hearing, Applicant was represented by Lieutenant Thomas. *Id.* Lieutenant Thomas's statement at the hearing is summarized as follows:

> Staff Representative Thomas advised he spoke with inmate Farrakhan-Muhammad. Representative Thomas indicated inmate Farrakhan-Muhammad requested he review video of the incident. Representative Thomas advised, on the day of the incident, he recalled requesting Lt. Alvarez preserve the video of the incident. According to the staff representative, Lt. Alvarez advised there was never video of the incident recorded.

*Id.*

During the hearing, Applicant stated to the DHO that "[t]he staff called me by another name, Mitchell. When I didn't answer to that name, he threw the trays through the slot onto the floor. I didn't throw them back out. I told him to stop playing with me. All four trays didn't come through the slot. One was on the slot, and I set it back out there. I didn't throw it." Docket No. 13-4 at 2.

The DHO's written report in part is as follows:

The DHO finds you committed the prohibited act of Assault Without Serious Injury, Code 224, based on your actions of throwing your food trays back out of the slot striking the reporting staff member in the hand.

3

The DHO bases this finding on the incident report writer's statement in Section 11, which indicates you assaulted him while he attempted to provide you with food trays in the medical observation cell. According to the reporting staff member, he advised you several times to step to the door to get your food trays. According to the staff member, you did not respond, so he placed your trays through the slot and on the floor. According to the reporting staff member, you then stated, "stop fucking with me," grabbed the trays and threw them back out of the slot. The reporting staff member advises the trays struck him in the right hand. The DHO considered the supporting memorandum from Health Services Assistant S. Mills who confirms the events described in the disciplinary infraction. The DHO also considered the photograph and Staff Injury Assessment of the reporting staff member as well as your photograph and the photograph of at least parts of two food trays. The DHO considered your photograph, Bureau of Prisons Health Services Clinical Encounter, and you [sic] IOC/UDC Mental Health Evaluation. According to your mental health evaluation, you were determined to be competent and responsible for your actions on January 22, 2015. In addition to the documentation above, the DHO considered your Inmate Chronological Record which reveals you have a history of violations of Code 224, Assault Without Serious Injury.

During the IDC process, you elected not to make a statement. During your UDC hearing, you provided a four (4) page written statement. You indicated you believe the incident report should be expunged due to your participation in a hunger strike which you allege impaired your mental abilities. During your DHO hearing, you stated, "The staff called me by another name, Mitchell. When I didn't answer to that name, he threw the trays through the slot onto the floor. I didn't throw them back out. I told him to stop playing with me. All four trays didn't come through the slot. One was on the slot, and I set it back out there. I didn't throw it." Prior to your DHO hearing, you provided the DHO with a handwritten statement. In your statement, you again express the information described above as well as your contention the reporting officer provoked you and retaliated by writing the disciplinary infraction. . . . In reference to your contention regarding the events, the DHO can find no apparent reason why the reporting staff member would falsify the document whereas you have reason to be less than truthful about the events to avoid the consequences of engaging in misconduct. The DHO also noted your contention of retaliation by the staff member. The DHO advises your allegation of staff misconduct has been referred to the appropriate authority. However, you are advised this is only an allegation and may not be investigated at this level. The DHO also finds it reasonable to believe you are attempting to redirect attention away from your actions. More

4

specifically, the DHO notes initially, you indicated you believed the report
should be expunged based on mental impairment.  However, you later
argue the staff member wrote the report out of retaliation.  The DHO finds
those varying statements to be an effort to redirect the attention away from
your actions.  The DHO did note your contention regarding the location of
the trays and your request for video as well as testimony of the officer who
photographed the food trays.  The DHO advised you, by your own
admission, there were four food trays provided on the day of the incident.
The photograph provided only the location of at least part of two of those
trays.  Although the other two trays were not photographed, the DHO
notes per the supporting memorandum provided by witnessing staff
member, S. Mills, immediately following the incident, she secured your
food slot and helped in picking up the items on the floor in front of your
observation room.  The DHO notes, it is reasonable to believe the only
trays photographed were the trays which remained near the inside
entrance of your cell as the other trays and food items had already been
cleared from the area when the photograph was taken.  The DHO
addressed your request for video by temporarily postponing the hearing to
contact the SIS Lieutenant.  According to SIS Lieutenant Alvarez, there
was never video of the incident recorded.

Docket No. 13-4 at 3-4.

Applicant asserts he was deprived of his due process rights in the disciplinary proceeding for IR No. 2674280.  Specifically, Applicant contends there was no corroborating evidence in the disciplinary record supported by "competent, material and substantial evidence corroborative substantive evidence."  Docket No. 1 at 4.  Applicant further contends that there is conclusive evidence that the reporting officer was the "investigator and perpetrator of the aggression and malfeasance towards the pro se Applicant" and retaliated against Applicant for "asserting his 1st Amendment rights to engage in hunger striking" and that the reporting officer wrote the incident report to "cover-up" his "egregious misconducts [sic] and unprofessional behavior."  *Id.* at 5.  For relief, Applicant requests that the Court hold an evidentiary hearing and void the April 27, 2017 disciplinary ruling.  *Id.* at 7.

5

Respondent counters that there is some evidence in the record to support the DHO finding that Applicant was guilty of assault without serious injury. Docket No. 13 at 5. Respondent further contends the incident report and the staff memoranda plainly support the disciplinary decision that Applicant committed a Code 224 violation by striking a prison official with a food tray. *Id.*

In the Reply, Applicant argues that the reporting officer "perjured the staff memorandums and the evidence introduced against pro se Applicant during the DHO proceeding." Docket No. 14 at 1.

The Court has considered the pleadings and will dismiss the action for the reasons stated below.

## II. LEGAL STANDARDS

### A. *Pro Se* Litigant

Applicant is proceeding *pro se*. The Court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). The Court may not assume that Applicant can prove facts that have not been alleged, or that Respondent has violated laws in ways that Applicant has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of*

*Carpenters*, 459 U.S. 519, 526 (1983). *Pro se* status does not entitle the litigant to an application of different rules. *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

**B. § 2241 Actions**

The writ of habeas corpus is available if a prisoner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A habeas proceeding is "an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 811 (10th Cir. 1997) (quoting *Preiser v. Rodriguez,* 411 U.S. 475, 484 (1973)). A § 2241 application must be filed in the district where the prisoner is confined. *Bradshaw v. Story*, 86 F.3d 164, 166 (10th Cir. 1996). Prison disciplinary proceedings that result in the deprivation of good-time credits may be challenged in a § 2241 proceeding. *McIntosh*, 115 F.3d at 811-12.

**C. Due Process**

"[I]t is well settled that an inmate's liberty interest in his earned good time credits cannot be denied without the minimal safeguards afforded by the Due Process Clause of the Fourteenth Amendment." *Mitchell v. Maynard*, 80 F.3d 1433, 1444 (10th Cir. 1996) (internal quotation marks omitted); *see also Howard v. U.S. Bureau of Prisons*, 487 F.3d 808, 811 (10th Cir. 2007) (citing *Mitchell* in the context of a federal prisoner challenging a prison disciplinary conviction). However, "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).

> Where a prison disciplinary hearing may result in the loss of good time credits, . . . the inmate must receive: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action.

*Superintendent, Mass. Corr. Inst. Walpole v. Hill*, 472 U.S. 445, 454 (1985) (citing *Wolff*, 418 U.S. at 563-67). In addition, "revocation of good time does not comport with the minimum requirements of procedural due process, unless the findings of the prison disciplinary board are supported by some evidence in the record." *Hill*, 472 U.S. at 454 (internal citation and quotation marks omitted). Review under the some evidence standard "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." *Howard*, 487 F.3d at 812 (quoting *Hill*, 472 U.S. at 455). "A disciplinary board's decision can be upheld . . . even if the evidence supporting the decision is meager. *Id.* (internal quotation marks omitted). Finally, the decisionmaker also must be impartial. *See Gwinn v. Awmiller*, 354 F.3d 1211, 1219 (10th Cir. 2004) (citing *Wolff*, 418 U.S. at 592) (Marshall, J., concurring) (stating that "an impartial decisionmaker is a fundamental requirement of due process" that is "fully applicable" to disciplinary hearings for prisoners).

### III. ANALYSIS

#### A. Insufficient Evidence

Applicant maintains that there was insufficient evidence to support his disciplinary conviction in violation of due process.

"Ascertaining whether the [some evidence] standard is satisfied does not require examination of the credibility of witnesses, or weighing of the evidence. Instead, the

relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill,* 472 U.S. at 455-56.  A disciplinary board's decision can be upheld by a reviewing court "even if the evidence supporting the decision is 'meager.'"  *Mitchell*, 80 F.3d at 1445 (quoting *Hill*, 472 U.S. at 457).

The record shows that the DHO relied upon (1) the statement by the incident reporter; (2) the supporting memorandum from the human services assistant who confirmed the described events; (3) a photograph and staff injury assessment of the reporting staff member; (4) a photograph of parts of two food trays; (5) Applicant's photograph; and (6) a BOP health services clinical encounter and Applicant's mental health evaluation.  Docket No. 13-4 at 4.  The DHO further states she considered Applicant's written and verbal statements.  *Id.*  One statement was provided at the UDC hearing, one was submitted prior to the DHO hearing to the DHO, and the third one, a verbal statement, was provided during the DHO hearing.  *Id.  See* Docket No. 13-4 at 4-5.  Further, Applicant did not present any exculpatory evidence to refute the DHO's finding that he was guilty of the charged offense.  The DHO's determination that the reporting staff member was more credible than Applicant is not reviewable by the federal habeas court.  *See Hill*, 472 U.S. at 455-56.

The Court concludes that statements in the incident report and the witness's memorandum constitute "some evidence" sufficient to support the disciplinary conviction of assault without serious injury.  *See, e.g., Ruelas v. Zuercher*, 240 F. App'x 796, 797 (10th Cir. 2007) (unpublished) (holding that an incident report alone constitutes "some evidence" of the inmate's guilt).

9

## B. Retaliation

Applicant states that the reporting officer falsified the incident report in retaliation for Applicant participating in a hunger strike. Docket No. 1 at 5. In a written statement Applicant wrote prior to the first UDC hearing, Applicant states that the disciplinary charges should be expunged because he was not able to appreciate the nature and consequences of his actions at the time of the January 22, 2015 incident due to his participation in a hunger strike. Docket No. 13-4 at 24. Applicant further states that the reporting officer issued the report in retaliation for Applicant filing a grievance against him regarding the incident. *Id.* at 25.

In a second written statement, dated February 26, 2015, Applicant asserts that when the reporting officer served Applicant's food tray he called him "Mitchell," and when Applicant did not respond, the officer threw the tray through the slot, which landed on the floor. *Id.* at 35. Applicant further asserts that the reporting officer did what he did because Applicant was participating in a hunger strike. *Id.* Applicant also asserts that the disciplinary charge was filed against Applicant because he had filed a grievance against the officer for his misconduct and the officer sought to "cover-up" his misconduct. *Id.* at 36.

To state a valid claim for retaliation, "[m]ere allegations of constitutional retaliation will not suffice; [Applicant] must rather allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights." *Frazier v. Dubois*, 922 F.2d 560, 562 n.1 (10th Cir. 1990). Applicant also must "prove that 'but for' the retaliatory motive, the incidents to which he refers, including the disciplinary action,

10

would not have taken place." *Smith v. Maschner*, 899 F.2d 940, 949-50 (10th Cir. 1990).

Applicant's claims do not support a retaliation argument. There is some evidence to find that Applicant threw the food trays back through the slot and hit the reporting officer, which resulted in Applicant being found guilty of assaulting someone without serious injury. Applicant, therefore, is unable to demonstrate he was exercising a constitutional right that was the "but for" cause for a retaliatory disciplinary action and conviction.

### C. Delay in Notification

The Court also notes that in the "Nature of the Case" section of the Application form Applicant states that the notice of the disciplinary charge he received on February 20, 2015 was untimely. Docket No. 1 at 3.

Adequate due process at a prison disciplinary hearing requires only that a prisoner be provided with written notice of the charges against him no less than twenty-four hours in advance of the disciplinary hearing. *See Wolff* at 563-66; *Maschner*, 899 F.2d at 946.

Because Applicant's DHO hearing was not held until April 27, 2015, which Applicant concedes was the date the DHO hearing took place, *see* Docket No. 1 at 3, the written notice of charges Applicant received on February 20, 2015 was timely under *Wolff*.

11

**IV. CONCLUSION**

Accordingly, Applicant cannot prevail on his due process claims. There is some evidence to support the disciplinary conviction, insufficient evidence to find retaliation by the reporting officer, and a timely notification of the disciplinary hearing.

For the reasons discussed above, it is

**ORDERED** that the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241, Docket No. 1, is DENIED and this case is DISMISSED with prejudice. It is further

**ORDERED** that leave to proceed *in forma pauperis* on appeal is denied. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore *in forma pauperis* status will be denied for the purpose of appeal. See *Coppedge v. United States*, 369 U.S. 438 (1962). If Applicant files a notice of appeal he also must pay the full $505 appellate filing fee or file a motion to proceed *in forma pauperis* in the United States Court of Appeals for the Tenth Circuit within thirty days in accordance with Fed. R. App. P. 24.

DATED April 16, 2018.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge